IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EDEN GARCIA, | § | |
| | § | Civil Action No. 5:25-cv-12 |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| CITY OF LUBBOCK, TEXAS, | § | |
| KIM KANE, | § | |
| and NATHON BOYD, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Eden Garcia ("Plaintiff"), complaining of City of Lubbock, Texas, police officer Kim Kane, and police officer Nathon Boyd ("Defendants"), and for cause would respectfully show the Court as follows:

### I. NATURE OF ACTION

1. Plaintiff was brutally assaulted by Kim Kane and Nathon Boyd, police officers with the Lubbock Police Department, on October 25, 2023. Defendants were acting under the color of law when they assaulted Plaintiff outside of his mother's home and broke his teeth by slamming him into the ground.

2. This is an action brought by Plaintiff against Defendants for their use of excessive force under the color of state law resulting in the unjustified assault of Plaintiff and the violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

3. Plaintiff alleges that the City of Lubbock and its Policymakers, including Chief Gregory Rushin, failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise properly equip and control their police officers, including those who are known, or who should have been known, to engage in the use of excessive force. Further, the City of Lubbock failed to properly implement training and policies governing the appropriate use of non-lethal force on members of the public.

4. The Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the Lubbock Police Department ("LPD") that respected Eden Garcia's constitutional rights and protection under the law. This duty was delegated to the Chief of the LPD to carry out the actions and policies of the Mayor and City Council by overseeing the day-to-day operation of the LPD.

5. The City and its Policymakers' failure to adequately supervise, discipline, and train officers Kim Kane and Nathon Boyd, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Eden Garcia's unwarranted and excruciating physical and mental anguish and injuries.

6. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages in his unjustified assault.

## II.   PARTIES

7. Plaintiff, Eden Garcia, is an adult individual and resident of Lubbock County, Texas.

8. Defendant, City of Lubbock, Texas, is a municipality incorporated under the laws of the State of Texas. Defendant City of Lubbock, Texas was at all times material to this complaint the employer of police officers Kim Kane and Nathon Boyd. The City of Lubbock

funds and operates the Lubbock Police Department, which, along with the Lubbock City Council, City Manager's office and Police Chief, are responsible for the implementation of the LPD's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The LPD is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Lubbock. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant, the City of Lubbock. The City may be served with summons herein by and through its City Manager, W. Jarrett Atkinson, at 1314 Avenue K, Lubbock, TX 79401, or wherever he may be found.

9. Defendant, Kim Kane, was at all times relevant herein a police officer with the City of Lubbock and the Lubbock Police Department ("LPD"). At all times material hereto, Kane was acting under color of law. Kane is sued in her individual capacity. Kane may be served at 1205 15th St, Lubbock, TX 79401, or wherever she may be found.

10. Defendant, Nathon Boyd, was at all times relevant herein a police officer with the City of Lubbock and the Lubbock Police Department ("LPD"). At all times material hereto, Boyd was acting under color of law. Boyd is sued in his individual capacity. Boyd may be served at 1205 15th St, Lubbock, TX 79401, or wherever he may be found.

### III. JURISDICTION AND VENUE

11. Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff by constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims, if any.

12. Venue is proper in this Court because the causes of action described herein occurred within the Northern District of Texas, Lubbock Division.

## IV. FACTS

13. On October 25, 2023, at approximately 10:24 PM, the Lubbock Police Department responded to a possible domestic disturbance at 3417 E. 17th Street, Lubbock, Texas. Officers Kane and Boyd were dispatched to the location in response to this call. Upon arrival the officers encountered Plaintiff and began aggressively questioning Plaintiff in an accusatory and confrontational manner.

14. Plaintiff, confused by the sudden interaction, attempted to explain that he was not part of the domestic situation. Nevertheless, the officers began issuing commands and treated him as a suspect.

15. The officers accused Plaintiff of being uncooperative despite his efforts to comply with their contradictory commands. The situation deteriorated as the officers' aggression increased, prompting Plaintiff to verbally protest his treatment.

16. Rather than de-escalating the situation, Officer Boyd suddenly and without provocation grabbed Plaintiff by the arm and violently slammed him to the ground. The force of this takedown was severe, causing Plaintiff to land face-first on the ground. Plaintiff was not actively resisting the officers prior to being violently slammed to the ground. Officer Boyd's attack was not prompted by any sort of aggression from Plaintiff. Plaintiff was not actively resisting or fighting any of the officers when he was attacked.

17. The violent impact shattered multiple teeth and caused significant facial injuries. Plaintiff immediately lost consciousness as a result of the blow to his head and face. The excessive force used by Officer Boyd was unjustified, as Plaintiff had posed no threat and had

been attempting to comply with the officers' demands before the sudden assault. This incident led to further physical and emotional trauma for Plaintiff, who required medical treatment for his injuries, including dental work for the broken teeth and care for the concussion and other head injuries he sustained during the attack.



18. At the time he was suddenly slammed face first into the ground, Plaintiff was not actively resisting officers or attempting to flee.

19. After Plaintiff was forcefully slammed to the ground by Officer Boyd, Officer Kane escalated the violence by repeatedly striking Plaintiff in the face with closed fists. Plaintiff had regained consciousness but was incapacitated and not even capable of posing a threat to any officer at time Officer Kane began punching Plaintiff in the face. In fact, one or more officers was sitting on top of Plaintiff while he was face down on the ground being repeatedly punched in the face and head. Due to Plaintiff's position on the ground, he was physically unable to resist or protect himself while Kane punched him and pulled his hair.

20. Officer Kane continued to deliver multiple blows to Plaintiff's face while he lay on the ground already injured and defenseless. On information and belief, Officer Boyd eventually intervened during Kane's assault by telling her "No" in an effort to get her to stop punching Plaintiff.

21. These punches caused significant swelling, bruising, and additional trauma to Plaintiff's head and face. The continuous strikes by Officer Kane were excessive and unnecessary, further exacerbating the injuries Plaintiff had already sustained from the violent take down by Officer Boyd. This violent conduct by Officer Kane, particularly when Plaintiff was already subdued and non-threatening, served no purpose other than to punish Plaintiff for questioning officers about the reason for their encounter.



22. At the time of the incident, Plaintiff was 18 years old and had a small build, standing at approximately 5'7" and weighing around 125 pounds. His slight frame made him particularly vulnerable to the excessive force used by Officers Boyd and Kane. Despite Plaintiff

posing no physical threat due to his size, Officer Boyd's decision to slam him to the ground and Officer Kane's repeated punches to his face were both unnecessary and excessive given Plaintiff's inability to resist or pose any danger.

23. After the assault Plaintiff requested to be taken to the hospital, but the officers told Plaintiff he did not need to go to the hospital.

24. Plaintiff was being escorted to the Lubbock jail by Officer Kane when Plaintiff again lost consciousness in the back seat of Kane's patrol car. The impact from the assault caused Plaintiff to go in and out of consciousness. Officer Kane pulled her vehicle over to check on Plaintiff, but rather than take him to the hospital, continued to the jail.

25. En route to the jail, Officer Kane and Officer Boyd stopped to fill her vehicle with gasoline. Officer Kane and Boyd talked outside for approximately 15 minutes prior to returning to the car and taking Plaintiff to the jail.

26. Once at the jail, Officer Kane was instructed to take Plaintiff to University Medical Center by jail staff due to the severity of his injuries.

27. Plaintiff suffered and continues to suffer from these severe, permanent and life-altering injuries as a direct result of Defendants' use of excessive force that was caused by the City's policies, procedures, and training, and as a result of the lack of the same.

## V.     CAUSES OF ACTION

### COUNT I – EXCESSIVE FORCE
### 42 U.S.C. SECTION 1983
### PLAINTIFF AGAINST DEFENDANTS KIM KANE AND NATHON BOYD

28. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

29. Plaintiff would show that the actions of Defendants on the date at issue in this Complaint deprived Plaintiff of his constitutional rights.

30. Plaintiff would show that at all times material hereto, Defendants had a duty to avoid infliction of unjustified bodily injury to Plaintiff, to protect his bodily integrity and to not trample on his constitutional rights.

31. Plaintiff would show that the Defendants failed to act objectively reasonable officers would have acted in the same or similar circumstances. That is, Defendants, without legal or necessary justification or the need to do so, used excessive force as described above and caused severe and lasting physical injury to Plaintiff.

32. Plaintiff would show that Defendants denied Plaintiff his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

33. The actions by Defendants taken on that day were not objectively reasonable because they were designed to inflict excessive force in restraining an individual in a non-threatening situation that warranted no physical interaction with Plaintiff.

34. The unjustified and excessive force used by Defendants was not reasonable, nor was it necessary under the circumstances. Plaintiff exhibited no behavior and engaged in no course of conduct that would warrant him being slammed into the ground unconscious and punched several times while not actively resisting.

35. The force used by Defendants was objectively unnecessary, excessive, and unreasonable under the circumstances, as Plaintiff did not pose an immediate threat to the safety of Defendants or others. Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Plaintiff to suffer severe physical pain and injury, as well as mental and emotional distress, anxiety, terror and agony.

36. As a result of the conduct by Defendants, they are liable to Plaintiff for his injuries and resulting damages because Defendants actions amounted to excessive force under the circumstances.

### COUNT II – MUNICIPAL LIABILITY
### 42 U.S.C. SECTION 1983
### UNCONSTITUTIONAL CUSTOM, POLICY, OR PRACTICE
### PLAINTIFF AGAINST DEFENDANT CITY OF LUBBOCK

37. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

38. On and for some time prior to October 25, 2023 (and continuing to the present date) Defendant City, the LPD, and Chief Rushin deprived Eden Garcia of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendant and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, knowingly maintained, enforced and applied an official policy recognized by the City and the LPD.

39. Defendants Kim Kane and Nathon Boyd were acting under color of law.

40. Defendants Kane and Boyd acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant City.

41. On information and belief, Defendants Kane and Boyd were not terminated or disciplined for the unnecessary and unjustified amount of force used against Plaintiff.

42. Defendant City, together with its Policymakers, including the City Council and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

   a. Using excessive force;

b. Tolerating the use of excessive force;

c. Providing inadequate training regarding the use of force;

d. Providing inadequate training regarding the de-escalation of force;

e. Employing and retaining as law enforcement officers those who Defendant City, Chief Rushin, and the LPD, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens through assault and excessive use of force;

f. Inadequately supervising, training, controlling, assigning and disciplining law enforcement officers who Defendants each knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits;

g. Employing and retaining officers who have been known to be abusive;

h. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by those who are law enforcement officers;

i. Failing to adequately discipline law enforcement officers for the above-referenced categories of misconduct and discipline that is so slight that is tantamount to encourage misconduct;

j. Having and maintaining an unconstitutional custom and practice of using excessive force and covering up police misconduct. These customs and practices by the City, Rushin and the LPD were condoned by Defendants in deliberate indifference to the safety and rights of civilians, including Eden Garcia.

43. The City and its policymakers have established and maintained a culture that permits and even tacitly encourages the use of excessive force by its officers. This pattern is

evidenced by numerous incidents in which LPD officers have deployed lethal or unnecessary force against individuals who posed no immediate threat. These incidents, involving Defendants and other LPD officers, demonstrate a systemic failure to hold officers accountable, creating an environment where excessive force is tolerated, if not implicitly endorsed.

44.     Despite these incidents, there is no evidence that LPD conducted meaningful investigations or took corrective action. Officers involved in prior excessive force cases, including Defendants, have been retained on the force, and in some cases, promoted, underscoring a culture of impunity. This lack of discipline sends a clear message to officers that unconstitutional uses of force will not result in consequences, thereby emboldening future misconduct.

45.     By reason of the aforementioned policies and practices of Defendant City, the LPD and their Policymakers, Plaintiff experienced severe pain and suffering from his assault at the hands of Defendant officers, for which Plaintiff is entitled to recover damages. The aforementioned acts and omissions also caused Plaintiff's extreme pain and suffering.

46.     Defendant City and the LPD, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants encouraged, condoned, tolerated and through actions and inactions ratified such policies. Said Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other individuals similarly situated.

47.     By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant City and the LPD acted with an intentional, reckless, callous

disregard for the well-being of Plaintiff and his constitutional and human rights. Defendant's actions were willful, wanton, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

48.     The City's policymakers were repeatedly put on notice of systemic issues within the LPD through civil lawsuits, public complaints, and internal reports detailing incidents of excessive force. Despite this, the City failed to take adequate remedial action, such as revising use-of-force policies or implementing comprehensive training programs focused on de-escalation techniques.

49.     The City has failed to implement safeguards such as external oversight, body camera monitoring, or performance audits that could have deterred or documented excessive force incidents. This omission reflects a conscious disregard for the constitutional rights of individuals interacting with LPD officers, including Plaintiff.

50.     The City's failure to address known deficiencies in LPD training, supervision, and accountability is tantamount to a policy of deliberate indifference. This systemic neglect was a proximate cause of the unconstitutional conduct perpetrated by Defendants Kane and Boyd against Plaintiff.

51.     Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants City and the LPD were affirmatively linked to, and were a significantly influential force behind the injuries to Plaintiff.

**COUNT III – MUNICIPAL LIABILITY**
**42 U.S.C. SECTION 1983**
**FAILURE TO TRAIN**
**PLAINTIFF AGAINST DEFENDANT CITY OF LUBBOCK**

52. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

53. The conduct of Defendants Kane and Boyd as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

54. The conduct set forth supra evinces a custom of using excessive or improper force, a lack of policies and training instructing deputies on the appropriate manner in which to handle individuals through non-lethal tactics and the appropriateness of using force and the use of force continuum. Specifically, a custom of using force against suspects when no immediate risk of harm is posed to officers or to others.

55. With respect to the claims made the basis of this lawsuit, the City and the LPD failed to adequately train, supervise or discipline its employees regarding the unnecessary use of excessive force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference on the City and LPD to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

56. Defendant City developed and maintained a policy of deficient training of its police force in the appropriate use of force against suspects who do not pose an immediate risk of harm to the officers or the public and who are not resisting. The City's training is designed and implemented by Chief Rushin and the City to act in this regard.

57. The City's failure to provide adequate training to its sheriff deputies regarding the use of excessive force reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive on citizens and made

the violation of Plaintiff's constitutional rights, including his severe injuries, a reasonable probability.

58. Defendants Kane and Boyd were acting under the color of law and acting pursuant to customs, practices and policies of the City and the LPD in regards to the use of excessive force as authorized and/or ratified by the Policymakers, specifically Chief Rushin and the City when they deprived Plaintiff of rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the City failing to provide proper training in the use of excessive force in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

59. On information and belief, Defendant City, the LPD, and Chief Rushin, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff, failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiff and implemented policies, procedures, and practices which actually interfered with or prevented Plaintiff from receiving the protection, assistance and care he deserved.

60. For instance, the following conduct, policies, and customs, *inter alia*, by Defendant City violated Plaintiff's constitutional rights:

   a. The inadequacy of LPD's policies, training, supervision or discipline relating to the use of excessive force;

   b. The inadequacy of LPD's policies, training, supervision or discipline relating to the use of non-lethal force and tactics, including the use of closed-first strikes, use of take downs, and kneeling on suspects;

    c. The adoption of completely subjective continuum of force policy that can be expressly avoided and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene;

    d. The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is excessive force;

    e. Lack of training in regard to effective communication with citizens while giving them commands and determining their compliance.

    f. Using excessive force against Plaintiff although he caused no immediate threat; and

    g. Using excessive force against Plaintiff while he was detained and not resisting.

61. The City's failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violation of Plaintiff's constitutional rights.

## COUNT IV – MUNICIPAL LIABILITY
## 42 U.S.C. SECTION 1983
## FAILURE TO SUPERVISE AND/OR DISCIPLINE
## PLAINTIFF AGAINST DEFENDANT CITY OF LUBBOCK

62. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

63. On Plaintiff's governmental liability claim against the City for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

    a. The City and Chief Rushin failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

    b. The City and Chief Rushin were deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

    c. The failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Plaintiff's constitutional rights; and

    d. The City and Chief Rushin failed to adequately supervise and/or discipline Defendants Kane and Boyd for their assault on Plaintiff for no lawful reason.

64. Despite having knowledge of Defendant Kane and Boyd's violations of the policies and other best police practices as described above, the City, LPD, and Chief Rushin failed and/or refused to adequately discipline Defendant officers. The City's Policymakers were well aware of the out-of-control behavior of Defendant officers but have failed to take any actions. The City's failure to adequately supervise and/or discipline its officers, including Defendant officers, was therefore the moving force behind Plaintiff's damages.

## VI. DAMAGES

65. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

66. **Actual damages.** Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by Plaintiff and Defendants should be held jointly and severally liable for the following damages:

    a. **Excessive Force**

        i. Actual Damages;

        ii. Disfigurement;

        iii. Conscious pain and mental anguish suffered by Plaintiff;

        iv. Mental anguish and emotional distress sustained as a result of Defendants' use of excessive force.

67. **Punitive/Exemplary Damages against all Defendants.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of the Defendants was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Plaintiff. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

68. Prejudgment and post judgment interest.

69. Costs of court.

70. Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

## VII.   TRIAL BY JURY

71. Plaintiff respectfully requests trial by jury.

## VIII.   PRAYER

72. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, punitive damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully Submitted,

        THE LAW OFFICES OF BLERIM ELMAZI, PLLC

        */s/ Blerim Elmazi*
        BLERIM ELMAZI, ESQ.
        State Bar No. 24118375
        3010 LBJ Freeway, Suite 1450
        Dallas, TX 75234
        Telephone: (682) 888-0091
        Blerim@ElmaziLaw.com

        **ATTORNEY FOR PLAINTIFF**